IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.:  Case 6:14-cv-01485-GAP-GJK

**ARELIS NUNEZ,**

    **Plaintiff,**

vs.

**J.P. MORGAN CHASE BANK N.A.,**
A Delaware Corporation,  **MANUFACTURERS and
TRADERS TRUST COMPANY, d/b/a M and T
BANK,** A New York Corporation, and
**BAYVIEW LOAN SERVICING LLC,**
A Delaware Limited Liability Company,

    **Defendants.**
_____/

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff Arelis Nunez, by and through undersigned counsel, sues Defendants J.P. Morgan Chase Bank, N.A., Manufacturers and Traders Trust Company d/b/a/ M and T Bank, and Bayview Loan Servicing LLC., and alleges:

### I.  THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Arelis Nunez is a natural person, a citizen of Brevard County, Florida, over the age of 21 and otherwise sui juris.

2. Defendant J.P Morgan Chase Bank N.A. is a Delaware Corporation with its principal place of business in the State of New York.  This Defendant will be referred to hereafter as "Chase."  Among other business activities, Chase acts as a mortgage servicer managing and administering mortgage loans on behalf of mortgage investors who participate in the secondary mortgage market.  Chase is subject to specific federal laws and administrative

regulations governing its mortgage serving activities. These laws include, but are not limited to, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et. seq*. (hereinafter RESPA) and implementing Regulation X, (12 C.F.R part 1024), hereinafter "Regulation X", as well as the Truth In Lending Act and implementing Regulation Z, (12 C.F.R part 1026).

3. Defendant Manufactures and Traders Trust Company d/b/a M and T Bank is a New York Corporation engaged in servicing federally related mortgage loans secured by real property throughout the United States and the State of Florida. This Defendant will be referred to hereafter as "M and T." As a mortgage servicer, M and T is subject to specific federal laws and administrative regulations governing its mortgage serving activities. These laws and regulations include, but are not limited to, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et. seq*. (hereinafter RESPA) and Regulation X, 12 C.F.R part 1024, hereinafter "Regulation X."

4. Defendant Bayview Loan Servicing LLC is a Delaware Limited Liability Company, whose managing member, David E. Quint, is a citizen of Florida. This Defendant will be referred to hereafter as Bayview. Bayview's principal place of business is located in Coral Gables, Florida. Because a limited liability company is a citizen of every state in which its members are citizens for purposes of diversity jurisdiction, Bayview is a citizen of Florida. Bayview has entered into an arrangement with M and T Bank to perform servicing functions in connection with a number of mortgage loans, including Plaintiff's mortgage loans.

5. In this action, Plaintiff pursues a claim under the Real Estate Settlement Procedures Act, 12 U.S.C §2601, et. seq. against Chase, M and T, and Bayview. Thus, this action presents a federal question giving this Court subject matter jurisdiction over that claim under 28 U.S.C. § 1331. Plaintiff also pursues an additional claim for negligence under the common law of the State of Florida against Chase. This Court has diversity jurisdiction over

these claims under 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy, including Plaintiff's claim for punitive damages, exceeds $75,000. In addition, this Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## II.  GENERAL ALLEGATIONS

6. Plaintiff owns a home in Palm Bay, Florida, which she purchased on or about June 29th, 2006.  In order to purchase that home, Plaintiff obtained a mortgage in the amount of $156,000.

7. The mortgage loan that Plaintiff obtained was originated by Amnet Mortgage Inc., D/B/A/ American Mortgage Network of Florida.

8. Sometime after Plaintiff's mortgage was originated, it was sold on the secondary mortgage market to an investor.  As of the date of this pleading, Plaintiff is not aware of the identity of that investor.

9. Plaintiff's mortgage loan is a federally related mortgage loan and is therefore covered by both the Real Estate Settlement Procedures Act and the Truth In Lending Act.

10. At all material times prior to September 16th, 2014, Chase serviced Plaintiff's mortgage loan on the investor's behalf.  However, Chase does not, and never has, owned the subject mortgage loan.  After September 16th, 2014 through the present time,  both M and T and Bayview began simultaneously servicing Plaintiff's mortgage loan.

11. Because neither Chase, M and T, nor Bayview have ever owned Plaintiff's mortgage loan, none of them would not suffer any adverse financial consequences if that loan were foreclosed upon and sold for less than the outstanding principal amount owed on the mortgage.

12.     During the year 2010, Plaintiff fell behind on her payments and Chase initiated a mortgage foreclosure lawsuit in its own name and on behalf of the investor that owns Plaintiff's mortgage debt in state court.

13.     During the month of October, 2012, the state court entered a foreclosure judgment in favor of Chase.

14.     As discussed in the correspondence attached hereto as Exhibit "A" however, the foreclosure sale that was initially scheduled was cancelled.  Then, in January of 2013, Plaintiff entered into a loan modification agreement with Chase on behalf of the investor that owns Plaintiff's mortgage loan.

15.     As also discussed in the correspondence attached hereto as Exhibit "A", Chase continued to maintain the foreclosure action even though Plaintiff complied with all of her obligations under the loan modification agreement. Due to Chase's continued maintenance of the foreclosure action and its failure to advise the state court of the loan modification agreement, the foreclosure sale proceeded on March 20th, 2013.  At that time, Plaintiff had fully complied with all of her obligations under the loan modification agreement and made all payments due thereunder.

16.     As the correspondence attached hereto as Exhibit "A" explains, Plaintiff, through counsel, notified Chase of this error, expressly invoking the recently amended error resolution procedures established by RESPA and  Regulation X (12 C.F.R 1024.35).  In addition to advising Chase that it had improperly completed the foreclosure of Plaintiff's home even though she had fully complied with the loan modification agreement, the attached correspondence also alerted Chase that there was an apparent payment application error as Chase had improperly

rejected one of Plaintiff's payment asserting that it was insufficient when that payment was, in fact, sufficient to satisfy Plaintiff's obligations as modified by the modification agreement.

17. Chase responded to the correspondence attached hereto as Exhibit "A" on March 13th, 2014. A true and correct copy of its response is attached hereto as Exhibit "B." Although it denied that any error had taken place, Chase agreed to secure its foreclosure counsel's cooperation in vacating the foreclosure judgment.

18. Notably, even though the letter from Chase attached as Exhibit "B" appears to recognize that Chase's failure to honor the loan modification was an error, the last sentence on the second page indicates that Chase expected Plaintiff to apply for a second modification in the event the sale was reversed.

19. Ultimately, with the cooperation of Chase's foreclosure counsel and the assistance of attorneys from Community Legal Services of Mid-Florida who represented Plaintiff on a pro bono, the foreclosure sale was vacated.

20. As the letter attached hereto as Exhibit "C" also reflects, Chase ultimately agreed to honor the loan modification agreement and requested that Plaintiff pay the payments that had accrued in the interim. Plaintiff promptly complied with Chase's request, and sent the entire amount of funds that Chase had requested. Those funds had been held in escrow by the pro bono attorneys representing Plaintiff, and were sent only after Chase agreed in writing that the amount was sufficient to reinstate the loan.

21. Plaintiff continued to comply with the loan modification agreement. Nevertheless, Chase began sending a series of letters incorrectly advising that Plaintiff had not paid her mortgage and warning that Chase would proceed with a new foreclosure action. Each notice asserted a different amount due, and that the last payment was received on a different date.

Examples of these notices are attached hereto as Exhibit "D," however these examples are not intended to be exhaustive.

22. Regulation X (12 C.F.R § 1024.35 (e)) unambiguously requires that upon receipt of a Notice of Error, the servicer must respond to the notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance;
>
> or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

23. After Chase failed to appropriately respond to Plaintiff's initial Notice of Error, Plaintiff sent Chase a second letter invoking both the information request and error resolution procedures of RESPA and Regulation X. This second RESPA/Regulation X correspondence sought information from Chase, and also reminded Chase that it failed to correct the previously asserted error arising from Chase's failure to honor the loan modification agreement, and continued prosecution of the foreclosure despite having entered into a loan modification with Plaintiff. A true and correct copy of the second Notice of Error, and Chase's response (without the voluminous enclosures) is attached hereto as Exhibits "E" and "F" respectively.

24. As the documents attached as Exhibit "E" and "F" reflect, Chase acknowledged that it wholly failed to process the loan modification, continued to proceed with foreclosure, and made no effort to rectify that situation before the service transfer to M and T and Bayview.

Nevertheless, Chase continued to insist in its response to the second letter that "there hasn't been an error."

## COUNT I – VIOLATION OF THE ERROR RESOLUTION PROCEDURES ESTABLIHSED BY RESPA AND REGULATION X (AGAINST CHASE)

25.     Plaintiff re-alleges and incorporates by reference her allegations in Paragraphs 1 through 24 above.

26.     This is an action for actual damages, statutory damages, attorney's fees and litigation costs brought pursuant to RESPA (12 U.S.C. 2605(f)).

27.     Through her Qualified Written Requests/Notices of Error attached hereto as Exhibits "A" and "E", Plaintiff alerted Chase that it had failed to comply with the loan modification agreement, and also that it failed to properly apply her payments.

29.     Chase was therefore obligated to investigate and correct these errors. However, as Chase's attached responses demonstrate, Chase provided a perfunctory response, but did no substantive investigation and made no corrections.

30.     Furthermore, as the documents attached hereto as Exhibit "D" and "F" reflect, Chase continued to fail to honor thee loan modification agreement, and continued to pursue foreclosure and collection activity for the entire time that it serviced Plaintiff's loan.

31.     In fact, a representative of Chase reached an understanding with one of the pro bono attorneys representing Plaintiff that if she paid the accrued payments at an agreed upon amount, Chase would process and honor the loan modification. Despite the fact that Plaintiff's counsel sent the funds (which had been held in escrow) and Chase accepted the funds, it never processed the loan modification and continued to pursue collection activity.

32. As a result of Chase's violation of the RESPA/Regulation X error resolution procedures, Plaintiff has been damaged. These damages include the misapplied funds, additional unwarranted finance charges flowing from the payment application error, costs associated with preparing and sending Plaintiff's Qualified Written Request/Notice of Error, the cost of legal services associated with the anticipated future foreclosure after Plaintiff retained additional counsel when pro bono counsel was unable to resolve the situation, and emotional distress.

33. Chase's repeated failures to properly respond to both of Plaintiff's Qualified Written Requests/Notices of Error are part of Chase's pattern and practice of non-compliance with the RESPA/Regulation X error resolution procedures  These repeated failures are a consequence of Chase's failure to implement adequate policies, procedures, and training and employ appropriately qualified individuals, in order to adequately handle borrower correspondence relating to errors.

34. In *Marais v. Chase Home Finance LLC*. 2014 WL 2515474 * 12 -13 (S.D. Ohio June 4th, 2014)(Docket Number 2:11-cv-314)  --- F.Supp.2d --, the Court analyzed a similar failure by Chase to appropriately respond to a borrower's efforts to invoke the RESPA/Regulation X error resolution procedures.   Other examples in which the undersigned has represented borrowers asserting errors involving Chase include the matter of Marco Hernandez v. J.P. Morgan Chase Bank, now pending in the United States District Court for the Southern District of Florida under case number No. 14-cv-24254, and the counter-claim brought by the foreclosure defendant Shelia Lewis in the matter of J.P. Morgan Chase Bank v.  Lewis, 20th Judicial Circuit Case No. 013-CA-0118. Like the case at bar, the borrower in the Lewis matter sent two separate letters invoking the RESPA/Regulation X error resolution procedure, and Chase failed to properly respond to both of them.

35. Thus, in every single case in which a borrower represented by the undersigned attempt to use the RESPA/Regulation X error resolution process to address apparent and well documented errors affecting their mortgage loan account, Chase's response was insufficient. In total that represents five different failures (not including the one discussed in *Marais*), because both this matter and the Lewis matter involved two different Qualified Written Requests/Notices of Error.

36. Plaintiff has retained undersigned counsel to represent her in this action and is entitled to an award of prevailing party attorney's fees pursuant to the attorney fee shifting provisions of RESPA found at 12 U.S.C §2605(f)(3).

WHEREFORE, Plaintiff demands trial by jury and respectfully requests that this Honorable Court enter judgment in her favor for actual damages as determined at trial together with an award of statutory damages, attorneys fees, and costs.

## **COUNT II. – NEGLIGENCE (AGAINST CHASE)**

37. Plaintiff re-alleges and incorporates by reference her allegations in Paragraphs 1 through 24 above.

38. This is an action for damages, including punitive damages, in excess of $75,000, exclusive of interest, attorneys' fees, and litigation costs.

39. Regulation X (12 C.F.R § 1024.35 (e)), imposes an affirmative obligation upon Chase to reasonably investigate and correct errors identified by a borrower through a Qualified Written Request/Notice of Error. By failing to correct the payment application errors in the Qualified Written Requests/Notices of Error attached hereto as Exhibits "A" and "E", and by continually failing to honor the loan modification agreement described above after it was brought

to Chase's attention through the Qualified Written Request/Notice of Error, Chase has breached that duty.

40. As a mortgage servicer entrusted with the administration of mortgage loan accounts, handling loan modifications, and other loss mitigation functions, as well as handling the funds that borrowers pay towards their mortgage debt, Chase engages in activity that can give rise to a foreseeable risk of economic harm to borrowers if these functions are not properly performed. As such, Chase has a duty to protect borrowers from foreseeable financial injuries that may arise from failure to maintain appropriate mortgage servicing systems, policies, and procedures and to appropriately train and supervise its staff.

41. Chase breached its duty to protect Plaintiff from foreseeable economic harm by failing to properly handle and implement her approved loan modification and failing to properly handle and credit her mortgage payments.

42. Chase's failures to comply with the above referenced statutory, regulatory, and common law duties are willful or wanton, and the consequences of Chase's calculated decision not to implement sufficient procedures, employ sufficiently trained staff, or properly supervise its mortgage servicing staff in order to adequately comply with these duties and obligations. Chase's omissions are a direct consequence of its decision to forego the implementation of appropriate policies, procedures, staffing, and supervision in order to minimize its overhead and maintain its profit margin. Chase knew or should have known that its failure to act would cause economic injury to Plaintiff and others similarly situated. In order to deter Chase from continuing to engage in similar misconduct in the future and vindicate the deterrent function of tort law, an award of punitive damages in this action is both appropriate and necessary.

WHEREFORE, Plaintiff demands trial by jury and respectfully requests that this Honorable Court enter judgment in her favor for actual and punitive damages as determined at trial together with an award of costs.

### COUNT III – VIOLATION OF THE ERROR RESOLUTION PROCEDURES ESTABLIHSED BY RESPA AND REGULATION X (AGAINST BAYVIEW AND M AND T)

43. Plaintiff re-alleges and incorporates by reference her allegations in Paragraphs 1 through 24 above.

44. This is an action for actual damages, statutory damages, attorney's fees and litigation costs brought pursuant to RESPA (12 U.S.C. 2605(f)).

45. After the servicing of Plaintiff's loan was transferred to M and T and Bayview, Plaintiff sent a third Qualified Written Request/Notice of Error to Bayview, alerting Bayview to the continued failure to honor the loan modification agreement, and offering to pay the additional payments that accrued in the interim if Bayview would confirm that it was prepared to honor that agreement. A true and correct copy of that document is attached hereto as Exhibit "G."

46. Although it is far from clear whether M and T, Bayview, or both of them, was the designated servicer for Plaintiffs' loan, Bayview had sent correspondence to Plaintiff providing an address for RESPA related communications, including Notices of Error. A true and correct copy of that document is incorporated into Plaintiff's Notice of Error attached hereto as Exhibit "G", this document is referred to as "Attachment 1."

47. Neither Bayview nor M and T ever responded to Plaintiff''s Notice of Error in any way. Accordingly, it can only be reasonably inferred that neither Bayview nor M and T corrected the error described in the Notice of Error, thereby violating the provisions of RESPA and Regulation X referenced in Paragraph 22 above.

48.     Either Bayview is an agent of M and T authorized to handle RESPA correspondence, or both Bayview and M and T simultaneously service Plaintiffs' loan. In either event, both are jointly and severally liable for the complete failure to comply with RESPA/Regulation X's requirements in response to Plaintiff's Notice of Error.

49.     As a result of Bayview and M and T's violation of the RESPA/Regulation X error resolution procedures, Plaintiff has been damaged. These damages include the misapplied funds, additional unwarranted finance charges flowing from the payment application error, costs associated with preparing and sending Plaintiff's Qualified Written Request/Notice of Error, the cost of legal services associated with the anticipated future foreclosure, and emotional distress.

50.     Bayview and M and T's complete failure to respond to Plaintiff's Qualified Written Request suggests that, like Chase, both Bayview and M and T fail to maintain adequate policies, procedures, and training or to employ sufficiently qualified personnel necessary in order to comply with RESPA/Regulation X's error resolution procedures, and therefore their failure to comply in this case is part of a pattern and practice justifying an award of statutory damages.

WHEREFORE, Plaintiff demands trial by jury and respectfully request that this Honorable Court enter judgment in her favor for actual damages as determined at trial together with an award of statutory damages, attorneys fees, and costs.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all claims so triable.

        Respectfully Submitted,

        THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.

        1000 W. McNAB RD. STE. 150
        POMPANO BEACH, FL 33069
        Phone:  (954) 942-5270
        Fax:     (954) 942-5272
        Email:   jgolant@jeffreygolantlaw.com
        By: **/S/ JEFFREY N. GOLANT ESQ.**
        Fla. Bar. No. 0707732
        Co-Counsel for Plaintiff Arelis Nunez

        COMMUNITY LEGAL SERVICES  OF MID-FLORIDA

        Kimberly Sanchez Esq.
        Fla. Bar. No. 17465
        122 East Colonial Drive, Ste. 124
        Orlando, Florida 32801
        Phone:  (407) 841-7777
        Co-Counsel for Plaintiff Arelis Nunez

### **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using CM/ECF and served upon counsel identified below via Notice of Electronic filing generated by CM/ECF on December 29th, 2014.

        **/s/  Jeffrey Golant**

Bryant S. Delgadillo
*Counsel for Defendant*
Wargo French
1888 Century Park East
Suite 1520
Los Angeles, CA 90067
Phone: 310-853-6927
Email: bdelgadillo@wargofrench.com