# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ARELIS NUNEZ,**

        **Plaintiff,**

**v.**
                                  **Case No:   6:14-cv-1485-Orl-31GJK**

**J.P. MORGAN CHASE BANK, N.A.,
MANUFACTURERS and TRADERS
TRUST COMPANY and BAYVIEW
LOAN SERVICING LLC,**

        **Defendants.**

_____

## ORDER

       This matter is before the Court on Defendant J.P. Morgan Chase Bank, N.A.'s ("Chase")

Motion to Dismiss the Amended Complaint (Doc. 31), Defendants Manufacturers and Traders Trust

Company's ("M and T") and Bayview Loan Servicing, LLC's ("Bayview") Motion to Dismiss (Doc.

34), Plaintiff Arelis Nunez's Response to Chase (Doc. 40) and her Response to M and T and

Bayview's Motion (Doc. 41).[1]

### I.    Background

       This case arises out of the Plaintiff's default on her home loan and Chase's responses to

asserted errors related to the foreclosure on the home and subsequent loan modification. In 2010

Plaintiff began having difficulty repaying her loan, which was serviced by Chase, causing a default

and a foreclosure action in state court. In October 2012, the state court issued a foreclosure

---

[1] Chase also filed a Reply in Support of their Motion (Doc. 42) without leave of the Court, which contravenes Local Rule 3.01(c). Chase subsequently filed a Notice Striking its Reply. (Doc. 43).

judgment. But prior to the foreclosure sale, in January of 2013, Plaintiff and Chase entered into a loan modification agreement with the goal of keeping Plaintiff in her home. The problems that led to this lawsuit appear to stem from the failure of Chase's attorney to timely notify the state court that there was a loan modification in place and that the foreclosure sale should be cancelled or continued—this failure ultimately caused a foreclosure sale in spite of the loan modification.

Following the sale, on March 3, 2014, Plaintiff's counsel sent Chase the first of two letters informing it of errors with the account. The letter stated in pertinent part:

> [T]here are two separate but related errors affecting Ms. Nunez's loan. First, Chase and the law firm representing it failed to timely and properly advise the Court of the substance of the agreement between Chase and Ms. Nunez[.] As a result, Chase completed the foreclosure, despite having entered into a binding agreement not to do that. Even now Chase and its foreclosure counsel are preparing to evict Ms. Nunez— even though she fully complied with her obligations under the loan modification agreement.
>
> Second, Chase failed to accept Ms. Nunez's December [2013] payment, erroneously insisting that the amount agreed upon in the loan modification was insufficient.

(Doc. 24-1). Chase's provided a detailed response on March 13, 2014 that disclosed the following timeline:

**Modification Review:**

- Modification review began when Nunez applied for loan modification on November 20, 2012.

- Chase requested the pending foreclosure sale be postponed and on December 18, 2012, the state court postponed the sale until March 20, 2013.

- On January 20, 2013, Chase requested its foreclosure counsel move for a postponement of the March 20, 2013 foreclosure sale. The foreclosure attorney, evidently, did not do this.

- On February 21, 2013 Chase received confirmation that the sale was still on hold.

- Chase initiated a "Modification review process" early in 2013, which is essentially a trial payment plan—if Plaintiff successfully completed the payments, the modification was to become permanent. The due dates for the three trial payments were in February, March, and April of 2013.

- Chase acknowledged that the Plaintiff timely made all of the trail payments from February through April 2013.

- On March 15, 2013, despite Chase's January request to cancel the sale and Plaintiff's February trial payment being timely made, Chase was informed by its foreclosure attorney that the foreclosure court required a hearing to cancel a sale, and that such a hearing must be scheduled ten (10) days prior to the scheduled sale. Since the sale was scheduled for March 20, 2013, the attorney missed the chance to schedule a sale cancellation hearing, and the court required the sale move forward.

- On March 19, 2013, Chase asked the foreclosure attorneys to request a postponement because Nunez's "loan modification review[2] was still in process and they had received the first trail plan payment."

- Despite Chase's request to postpone the sale, it went forward on March 20, 2013.

- Following the sale of the property, Chase approved the final loan modification on May 8, 2013.

**Rescission**

- Two months after the sale, on May 17, 2013 Chase began its first efforts to rescind the foreclosure sale.

- The state court denied the first rescission request on December 19, 2013.[3]

- Chase initiated a second rescission process on February 24, 2014.

(Doc. 24-2). In response to the alleged errors, the letter explained that the modification had been cancelled because of the denial of the rescission. While the letter was plainly well researched it reached the odd conclusion that there had been no error with the account.

---

[2] Chase's use of the phrase "loan modification review" appears to be somewhat of a misnomer. Nunez was given a trial modification period, which appears to have entitled her to a loan modification upon successful completion of the trial payments. It was not the case that Chase was reviewing a modification application which may or may not have resulted in a modification at Chase's discretion.

[3] Ultimately, Chase's second attempt to rescind the sale was successful and complete by May 15, 2014. (Doc. 24-6).

Plaintiff's second letter to Chase, on September 8, 2014, asserted that it improperly placed her payments in a suspense account rather than applying it to the loan and again asserted that Chase failed to honor the modification agreement. (Doc. 24-5). Chase's second response, on October 27, 2014, again chronicled the history of the foreclosure sale and then explained that the modified repayment plan was cancelled because the first attempt to rescind the foreclosure sale failed. (Doc. 24-6). Chase then stated that the cancellation was later un-cancelled after the second rescission process was successful. Chase recounted its discussion with Plaintiff's agent leading to its agreement to honor the modified loan agreement upon receipt of $3,450.09 to bring the loan current. Chase received the funds it required on July 3, 2014. After some processing by Chase, which involved briefly holding the Plaintiff's funds a suspense account, the modified plan was implemented on August 22, 2014. Subsequently, on September 16, 2014 servicing of the loan was transferred to M and T under the modified loan terms. Plaintiff, wrote one additional letter to Bayview[4] on October 8, 2014, asserting an error with the account. Bayview deemed the letter duplicative and did not provide a substantive response to Plaintiff's notice of error.

Plaintiff asserts that the Defendants have failed to live up to their obligations to respond to her notices of error under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et. seq.* ("RESPA") and implementing Regulation X, (12 C.F.R part 1024) ("Regulation X").[5] Further, Plaintiff asserts that Chase is liable for negligence per se in its response to her requests to correct

---

[4] The notice of error (Doc. 24-7) was sent to Bayview only. However, according to the Amended Complaint, Bayview and M and T had contractually agreed to both work to service multiple loans, including the Plaintiff's loan. (Doc. 24 ¶ 4).

[5] The Amended Complaint states that it is also brought under the Truth In Lending Act and implementing Regulation Z, (12 C.F.R part 1026). (Doc. 24 ¶ 2). However, none of the claims expressly invoke Regulation Z, nor even mention it, and the analysis herein is accordingly limited to RESPA and Regulation X.

the account errors and to comply with the loan modification. Chase has moved to dismiss, arguing that Plaintiff's exhibits establish, as a matter of law, that it fulfilled its requirements, that Plaintiff failed to allege causation as to damages,[6] and that the laws cited created no duty for Chase thus it cannot be liable for negligence. Bayview and M and T assert that they had no obligation to respond to the Plaintiff's letters and that Plaintiff has not sufficiently alleged damages as against them.

## II.     Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto.   Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).   The Court will liberally construe the complaint's allegations in the Plaintiff's favor.   *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).   However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)).   This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.   *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[6] For purposes of this Order, the Court assumes that causation damages have been alleged.

will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007).  The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### III.   Analysis

#### A.  RESPA Claims

##### i.  Count I—RESPA Claim Against Chase

Count I asserts that Chase failed to fulfill its duties to investigate and correct or explain errors after receiving Plaintiff's two letters. Specifically, Plaintiff asserts that Chase failed to comply with Regulation X, 12 C.F.R. § 1024.35(e), which requires that upon receipt of a notice of error, a servicer must respond as follows:

> (i) In general. Except as provided in paragraphs (f) and (g)[7] of this section, a servicer must respond to a notice of error by either:
>
> > (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> >
> > (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

"Errors" are broadly defined in 12 C.F.R. § 1024.35 and includes various categories which were implicated by both of the Plaintiff's letters. *See, e.g.,* 12 C.F.R. § 1024.35(b) (1, 7, 10).

---

[7] Chase does not assert either of these exceptions are applicable for purposes of the Motion to Dismiss. M and T and Bayview, however, do assert an exception based on duplicative requests.

Chase chose to respond within the requirements of 12 C.F.R. § 1024.35(e)(i)(B),[8] which applies when a servicer determines that there has been no error with the account. The letters demonstrate that Chase's investigation was thorough and chronicled the history of the loan quite extensively. Chase stated that it did not believe an error had occurred, provided its reasons for the determination, included a statement of Plaintiff's rights to request additional information, enclosing some of the documents relied upon by Chase, and identified a dedicated customer service specialist to assist the Plaintiff. Plainly, Chase complied with the letter of the law as prescribed by 12 C.F.R. § 1024.35(e)(i)(B).

Quizzically, the conclusion that no error had occurred stands in contrast to the history traced out in the loan. A fairer assessment of the situation was that Chase reviewed the account, concluded that there was a problem (namely that the foreclosure proceeded when it should not have) and it was working on fixing the problem. Yet, 12 C.F.R. § 1024.35(e)(i) does not contemplate errors of the type that cannot be fixed within the thirty day response deadline. *See* 12 C.F.R. § 1024.35(e)(3). Regulation X gives a servicer only two options to reply to a notice of error: 1) state that it had erred and that the error was fixed; 2) state that there had been no error and explain why. In the event that an error has occurred, but will take some time to fix, a servicer is without recourse to accurately state the situation and comply with Regulation X's binary response options.

Chase appears to have done the best it could, given the circumstance, and complied with the letter and spirit of the law. Ultimately, Chase did fix the problem and the Plaintiff, after some time wrangling with Chase and the foreclosure process, was put in her desired modified repayment

---

[8] Chase's response letters do not affirm that there was an account error, that it was corrected, and give a date of correction—accordingly, they do not techincally comply with 12 C.F.R. § 1024.35(e)(i)(A).

program and still has possession of her house. While this was, no doubt, an unpleasant experience, it is not one that is actionable as a failure to comply with 12 C.F.R. § 1024.35(e)(i).

### ii.   Count III—RESPA Claim Against Bayview and M and T

On September 16, 2014 Bayview and M and T took over servicing of the loan. Plaintiff sent another letter informing Bayview and M and T of the errors with the account, to which neither servicer responded. Instead, Bayview and M and T assert that Plaintiff's request was duplicative, and that Chase's earlier responses excused them from responding. (Doc. 34 at 2). The exception upon which they rely states:

> 1.   In general. A servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section if the servicer reasonably determines that any of the following apply:
>
>    i.   Duplicative notice of error. The asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (d) and (e) of this section, unless the borrower provides new and material information to support the asserted error. New and material information means information that was not reviewed by the servicer in connection with investigating a prior notice of the same error and is reasonably likely to change the servicer's prior determination about the error.

12 C.F.R. § 1024.35(g)(1)(i). Whether a sufficient response by an earlier servicer can excuse a new servicer from providing a substantive response to a notice of error is a question of first impression for this Court. The text excuses servicers from being subject to Regulation X's response obligations where the same errors are raised without the introduction of new information on the part of a borrower. Here, the regulatory text permits the interpretation that a *sufficient* response and explanation by an earlier servicer serves to excuse later servicers from responding to a duplicative notice of error. Further, the purpose of the enabling statute was to prevent abusive practices by servicers. *See* 12 U.S.C. § 2601. For the duplicative notices exception to apply the transferor must have already sufficiently responded to a notice of error—accordingly the congressional goal of

avoiding abusive practices would have already been advanced and would not furthered by a second servicer repeating the same explanation of an earlier servicer.[9]

In this case the Plaintiff's notice of error,[10] which was attached to the Amended Complaint as Exhibit "G" makes clear that it was notifying the new servicer of the same errors that Plaintiff had previously raised with Chase. Since Chase's response was adequate, Bayview and M and T were excused from an obligation to respond under Regulation X. Further, Chase's letter of October 27, 2014 makes clear that when Bayview and M and T began servicing the loan, the errors the Plaintiff complained of had been fixed because the loan transferred to Bayview and M and T under the terms of the new loan and Plaintiff had already been informed of the changes. (*See* Doc. 24-6 at 3 ("The servicing of this loan transferred to M&T Bank on September 16, 2014. The loan transferred with the modified loan terms and monthly payment in place. A copy of the letter informing our customer of the transfer dated August 29, 2014, is enclosed for your reference."). Plaintiff's letter to Bayview dated October 8, 2014, hardly required a response when the asserted errors had been resolved prior to the transfer and the Plaintiff had been notified. Plaintiff's notice of error was duplicative under Regulation X and Chase's actions obviated any need for Bayview and M and T to respond and inform her of what she already knew.

---

[9] Practically, this entails that the transferee would have to undergo independent investigation of the alleged error and evaluate whether the earlier response was sufficient. If the transferee does not satisfy itself that the earlier response was sufficient, then plainly it would have a strong motivation to respond to the notice and address the asserted errors. The concern would be, obviously, that a court may share the opinion that the transferor's response was insufficient, and accordingly, the duplicative notice of error exception would not apply and both the transferor and transferee may be liable for failing to adequately respond under Regulation X.

[10] Bayview and M and T correctly point out that the letter sent to Bayview can only be characterized as a notice of error and not a request for information, the letter specifically states: "The purpose of this letter is to alert you to the ongoing servicing errors and request that, as required by RESPA/Regulation X, you investigate them, make appropriate corrections, and confirm these corrections in writing." (Doc. 24-7).

## B.  Count II - Negligence Per Se Claim Against Chase

Finally, Plaintiff's negligence theory is predicated on her argument that Chase violated RESPA and Regulation X. "A negligence per se claim [is] appropriate under Florida law when there is a violation of a 'statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury.' " *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 353 (11th Cir. 2012). Yet, because negligence per se is predicated on the violation of a statute or regulation, where there is no violation a negligence per se claim cannot stand.

Therefore, it is

**ORDERED,** the Defendants' Motions to Dismiss (Docs. 31 and 34) are **GRANTED,** the Amended Complaint (Doc. 24) is **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 13, 2015.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

- 10 -