**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ARELIS NUNEZ,**

       **Plaintiff,**

**v.**                                                                Case No: 6:14-cv-1485-Orl-31GJK

**J.P. MORGAN CHASE BANK, N.A.,**

       **Defendant.**

## ORDER

This matter comes before the Court, without hearing, on the Motion for Partial Summary Judgment (Doc. 86) filed by the Plaintiff, Arelis Nunez; the Response in Opposition (Doc. 92) filed by the Defendant, J.P. Morgan Chase Bank, N.A. ("Chase"); Nunez's Reply thereto (Doc. 97); Chase's Motion for Summary Judgment (Doc. 87); Nunez's Response in Opposition (Doc. 93); and Chase's Reply thereto (Doc. 98).

**I.**     **Background**

    **A.**     **Summary of the Facts**

On June 29, 2006, Nunez financed the purchase of her home in Palm Bay, Florida with a mortgage in the amount of $156,000. (Doc. 24 ¶ 6.) Chase serviced Nunez's mortgage up until September 16, 2014. (*Id.* ¶ 10.) Sometime in 2010, Nunez fell behind on her mortgage payments, and Chase began foreclosure proceedings. (*Id.* ¶ 12.) The state court entered a Final Summary Judgment of Mortgage Foreclosure on October 17, 2012, and set the property for auction on December 19, 2012. (Doc. 75-1.) In the meantime, Nunez applied for a mortgage modification. (Doc. 75-2 at 9.) While Chase reviewed Nunez's application, it filed a motion to cancel the

foreclosure sale. (*Id.*) The state court granted Chase's motion on December 18, 2012, and postponed the foreclosure sale until March 20, 2013. (Doc. 75-3.)

In January 2013, Nunez and Chase entered into a trial modification agreement that required Nunez to make three trial payments. (Doc. 86-1 at 18:7–14.) Nunez made her first payment on February 18, 2013. (Doc. 86-1 at 19:21–20:3.) Despite the agreement and its receipt of Nunez's first payment, Chase did not timely move to cancel the foreclosure sale and, instead, moved only after the sale had already been completed. (Doc. 75-4.) Predictably, the state court denied Chase's motion. (Doc. 24-2 at 2.) Even so, Nunez submitted her next two trial payments on time, and on May 29, 2013, she executed the "permanent mortgage modification agreement" sent to her by Chase. (Doc. 86-1 at 19:21–20:3; Doc. 24-5 at 19; 24-1 at 5.)

On November 26, 2013, Chase filed its first motion to vacate the foreclosure sale. (Doc. 75-5.) The state court denied the motion on December 9, 2013, and Chase received a certificate of title to the property the following month. (Doc. 75-6.)

### 1. Nunez's First Notice of Error Letter

On March 3, 2014, Nunez sent her first notice of error to Chase ("First NOE"). (Doc. 24-1.) The First NOE asserted that Chase made two errors: (1) that it failed to timely and properly advise the state court of the trial modification agreement, potentially avoiding foreclosure, and (2) that it erroneously returned payments that Nunez submitted under the modified loan agreement. (Doc. 24-1 at 2.) Nunez concluded her letter demanding that Chase investigate the alleged errors and take corrective action in accordance with the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–17 ("RESPA"), and its implementing regulation, 12 C.F.R. § 1024 ("Regulation X").

Chase responded to the First NOE on March 13, 2014. (Doc. 24-2.) Chase began its response with the conclusion that there was no error. Despite its conclusion, Chase all but admitted that it failed to timely move to cancel or postpone the foreclosure sale. Specifically, Chase said:

> On January 20, 2013, we again asked our foreclosure attorneys to request a postponement of the March 20, 2013, sale. We received confirmation on February 21, 2013, that the sale was still on hold.
>
> On March 15, 2013, our foreclosure attorneys advised us that Brevard County required that a hearing to cancel the foreclosure sale must be scheduled 10 days prior to the scheduled sale. As that date had passed, we would have to proceed with the sale.

(*Id.* at 1–2.)

As to the alleged payments rejected in error, Chase explained that, when it received Nunez's payments, "they could not be applied to her loan because the foreclosure sale had taken place." (*Id.* at 2.) Thus, any received funds "were placed in a suspense fund" pending the outcome of Chase's attempt to vacate the sale. (*Id.*) Once the state court denied Chase's motion to vacate, Chase cancelled Nunez's modification and applied her payments "to outstanding attorney's fees and costs." (*Id.*) And any payments Chase received after its rescission action failed were simply returned as insufficient. Chase concluded its response by notifying Nunez that it had begun another rescission effort and, if successful, it would review Nunez's mortgage for modification a second time. (*Id.*)

Following Chase's response, Nunez joined Chase in its April 4, 2014, motion to vacate the foreclosure sale and dismiss the action.[1] (Doc. 75-9.) The state court granted the motion on April

---

[1] Curiously, the motion and resulting order cite the "Permanent Loan Modification" as the reason for dismissal, thus, contradicting the purported reason for the return of Nunez's payments—i.e., cancellation of the loan modification. (Doc. 75-9; Doc. 75-10.)

21, 2014, and reversed the sale. (Doc. 75-10.) Meanwhile, Nunez had been sending the payments required under the purportedly-cancelled loan modification to her attorney to be held in escrow. (Doc. 94 ¶ 13.)[2]

On June 4, 2014, Chase contacted Nunez's attorney and informed her that the modification agreement could be reinstated, but it needed $3,450 to bring the loan current. Nunez's attorney requested a letter stating the exact amount required by Chase, which she received on June 25, 2014.

Nunez's attorney sent the required payment from the funds held for Nunez in escrow, and Chase received the payment on July 3, 2014. (Doc. 24-6 at 2.) But two weeks later, Chase sent two letters to Nunez stating its intent to accelerate the mortgage and begin foreclosure proceedings yet again. (Doc. 24-4 at 1, 5.) The letters also stated that Chase was holding over $5,000 of Nunez's payments in a suspense account. (*Id.*) Chase's stated reason for the acceleration, threatened foreclosure, and suspension of funds was its non-receipt of Nunez's payments since July 2009. (*Id.*) Following these letters, Nunez, again, began sending her mortgage payments to her attorney to be held in escrow. (Doc. 94 ¶ 17.)

On August 15, 2014, Chase sent another letter that threatened acceleration and foreclosure and stated that the total payments held in suspense was now nearly $7,000. (Doc. 24-5 at 4.) In spite of these letters, Chase countersigned the loan modification agreement on August 18, 2014— more than one year after Nunez affixed her signature. (Doc. 24-5 at 11; Doc. 86-1 at 42:7–19.)

---

[2] In her Response to Chase's Motion for Summary Judgment (Doc. 93), Nunez relies on the affidavit of Alicia Magazu (Doc. 94), the pro bono attorney that represented Nunez at various times relevant to this case. Chase has moved to strike the affidavit raising two objections: (1) that the Affidavit contains and attaches as exhibits inadmissible hearsay and (2) that the affidavit covers information not within the affiant's personal knowledge. (Doc. 99.) The Court has not relied on any portions of the affidavit that Chase complains of, and therefore, the motion has been denied. (*See* Doc. 101.)

### 2. Nunez's Second Notice of Error Letter

On September 8, 2014, Nunez sent her second notice of error letter ("Second NOE") to Chase. Like the First NOE, the Second NOE identified two purported errors: (1) the confinement of Nunez's payments to a suspense account, and (2) the continued failure to honor the loan modification agreement, as evidenced by Chase's collection efforts. (Doc. 24-5 at 2.) Two days later, on September 10, 2014, Nunez filed the current action, and on September 16, 2014, Chase transferred the servicing of the loan to Bayview Loan Servicing, LLC ("Bayview"), who serviced the loan in conjunction with Manufacturers and Traders Trust Company ("M&T"). (Doc. 24-6 at 3.)

Chase sent its response to the Second NOE on October 27, 2014. (*Id.* at 1.) Chase, again, stated that it found no error in the servicing of Nunez's loan and began with a summary of its findings:

- We responded timely to your previous Notice of Error.
- We applied the modification terms of the loan appropriately.
- Funds on the account listed on our August 15, 2014, letter were momentarily held in suspense during the process of correctly applying the terms of the modification to [Nunez's] account.
- Corporate advances listing in our August 15, 2014, letter were listed on the account until they were resolved through the application of the terms of the loan modification.

(*Id.*) Following this list, Chase explained that the mortgage modification process was delayed due to the need to rescind the foreclosure sale. Specifically, Chase stated that, while rescission of the foreclosure sale was completed on May 15, 2014, Chase did not reverse the cancellation of the mortgage modification plan until August 18, 2014. Further, the loan updates were not completed until August 22, 2014. (*Id.*) Thus, Chase explained that Nunez's payments—including the $3,450

sent by her attorney—were held in suspense until it completed loan updates and reinstated the mortgage modification. (*Id.* at 2.) Lacking, however, is any mention of Chase's collection efforts.

### 3. Bayview and M&T

Not even a month after the servicing of her mortgage was transferred, Nunez began receiving debt collection letters from both Bayview and M&T. (Doc. 24-7 at 4, 18.) And, on October 8, 2014, Nunez sent a notice of error to Bayview detailing the correspondence that Nunez had with Chase and providing that, given Chase's alleged, repeated misapplication of her funds, she was reluctant to remit payment until she could get assurances that her loan modification was in place and would be honored. (*Id.* at 2.) Neither Bayview nor M&T ever responded, and on February 18, 2016, while the current case was still pending, Bayview filed a foreclosure action against Nunez (Doc. 93-1).

## B. Procedural History

Nunez filed her original Complaint (Doc. 1) with Chase as the only Defendant on September 10, 2014. Her claims were two-fold: that Chase failed to comply with RESPA when it responded to two notices of error sent by Nunez, and that Chase's failure to execute its duties under RESPA was negligence per se. On December 29, 2014, Nunez filed her Amended Complaint (Doc. 24) adding a third count and additional RESPA claim against Bayview and M&T.

Chase filed a Motion to Dismiss (Doc. 31) on January 12, 2015, and Bayview filed a Motion to Dismiss (Doc. 34) on January 26, 2015. Both were granted by the Court on April 13, 2015. (Doc. 44.)

In granting said motions, the Court reasoned that Chase had complied with the letter and spirit of RESPA despite the apparent contradiction between Chase's conclusions that no error

occurred and the details of Nunez's loan history. Essentially, the Court determined that, under the circumstances, Chase did the best it could to choose between RESPA's binary response options: either state that it had erred and that the error was fixed, or state that there had been no error and explain why. Specifically, the Court found that a fair "assessment of the situation was that Chase reviewed the account, concluded that there was a problem (namely that the foreclosure proceeded when it should not have) and it was working to fix the problem." (Doc. 44 at 7.) The Eleventh Circuit disagreed.

Upon review, the Eleventh Circuit concluded that the Court failed to recognize another set of Nunez's allegations and construed facts favorably to Chase, rather than Nunez. Specifically, the Eleventh Circuit found that, "Throughout this case, Nunez has clearly alleged that Chase failed to properly implement and honor the loan-modification agreement, and has attached documents that support this claim." *Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905, 909 (11th Cir. 2016). The Eleventh Circuit continued:

> Viewed in the light most favorable to her, Nunez has alleged that her home was wrongly foreclosed on despite a valid loan-modification agreement, simply because Chase failed to timely request postponement of the foreclosure. Chase later purported to cancel its loan-modification agreement with her because it could not rescind the wrongful foreclosure. Even though it eventually did rescind the foreclosure and accept payment from Nunez to renew the loan-modification agreement, Chase continued to shower Nunez with letters claiming she was in default and threatening another foreclosure. When she repeatedly notified Chase that these errors had occurred, Chase flatly denied any error. Nunez's allegations—each supported by attachments—are not reflected in the district court's conclusions. Her claim that Chase failed to conduct a reasonable investigation into or correct its errors as required by RESPA rises above the level of speculation.

*Id.* at 910 (citation omitted). Thus, on April 22, 2016, the Eleventh Circuit reversed the Court's decision to grant Chase and Bayview's motions, and remanded for further proceedings. *Id.*

Shortly thereafter, both M&T and Bayview settled with Nunez (Doc. 73), and Bayview voluntarily dismissed its foreclosure action on July 29, 2016. (Doc. 93-2.)

**II.     Standard of Review**

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351–52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324–25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324–25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting

facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

## III. RESPA and Regulation X

### A. Legal Standard

"RESPA is a consumer protection statute that regulates the real estate settlement process." *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). "RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related loans, including responding to borrower inquiries." *McLean v. GMAC Morg., Corp.*, 398 Fed. App'x 467, 471 (11th Cir. 2010). One such inquiry is a qualified written request.[3] Upon receipt of a qualified written request, a servicer must "respond by fixing the error, crediting the borrower's account, and notifying the borrower; or by concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016) (citing 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(1)(i)).

On January 10, 2014, new regulations implementing RESPA were promulgated by the Consumer Financial Protection Bureau pursuant to the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd–Frank"). PL 111-203, July 21, 2010, 124 Stat. 1376 (2010); 12 C.F.R. § 1024. This new regulation, Regulation X, clarified the duties owed by

---

[3] 12 U.S.C. § 2605(e)(1)(b)("a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that— (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower").

servicers of federally-related mortgages to borrowers after receiving a qualified written request or notice of error. Pertinent to the current action,

> a servicer must respond to a notice of error by either:
>
> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

Thus, a servicer responding to a notice of error under 12 C.F.R. § 1024.35(e)(1)(i)(B) must fulfill two requirements. It must (1) conduct a reasonable investigation, and (2) provide a written response stating that it found no error, the reasons for its conclusion, the documentation it relied upon to reach that conclusion, and other specific disclosures. *Id.*

**B. Analysis**

As an initial matter, much of the evidence before the Court is the same as that which was before the Court when it granted Chase's Motion to Dismiss and the Eleventh Circuit's reversal thereof. Namely, Nunez's First and Second NOEs, Chase's responses, the loan modification agreement, collection letters sent from Chase to Nunez, and the notice of error letter Nunez sent to Bayview. (Doc. 24-1, 24-2, 24-3, 24-4, 24-5, 24-6, 24-7.) Thus, the Court reviews this evidence in light of the Eleventh Circuit's decision.

Chase presents two arguments in its motion (Doc. 87). First, Chase argues that the undisputed facts show that it fully complied with RESPA and Regulation X—specifically, 12

C.F.R. § 1024.35(e)(1)(i)(B). (*Id.* at 16.) Second, Chase argues that Nunez has failed to provide sufficient evidence of damages. In her motion (Doc. 86), Nunez argues that Chase did not provide the "reason or reasons" that it found no error in its second RESPA response, and, therefore, violated RESPA as a matter of law.

### 1. Were Chase's Investigations Reasonable?

As detailed above, Nunez sent two notices of error to Chase; one on March 3, 2014, and another on September 8, 2014. It is undisputed that both of these notices triggered Chase's obligations under RESPA and Regulation X. Chase argues that the deposition testimony of its corporate representative and the detail of its responses show that Chase satisfied all of its obligations. However, it is clear that there remains a genuine question of fact as to whether Chase's investigation was reasonable—especially in light of the Eleventh Circuit's decision. *Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905 (11th Cir. 2016).

Chase's corporate representative testified that Chase "would have" investigated these notices of error by reviewing the pay history and notes in its servicing system, as well as court filings in the foreclosure proceeding. (Doc. 86-2 at 40–41.) She also testified that she knew that Chase followed its typical investigatory procedure in this case "[b]ecause of the detail in the responses date by date . . . responding to each of the specific complaints or questions." (*Id.* at 41.) The Court agrees that the detail of Chase's responses shows that it conducted an investigation into the alleged errors, but it does not necessarily follow that the investigation was reasonable.

Nunez's First NOE raised two errors: (1) Chase's alleged failure to notify the state court of the trial modification agreement, thus, failing to postpone the foreclosure sale, and (2) its rejection of payments that Nunez made under the trial modification agreement. Chase responded, concluding that there was no error and explained that it "requested that the foreclosure sale be

postponed, but the judge did not approve [its] request." (Doc. 24-2.) What Chase left out was that it only moved to postpone or cancel the sale after it had already taken place. (Doc. 75-4.)

Indeed, the record shows that Chase received Nunez's first trial payment on February 18, 2013—over a month before the sale was to take place. Yet Chase waited until after the sale was completed to file its motion to postpone the sale.[4] Thus, Chase's conclusion that no error occurred is contradicted by very court filings that Chase's corporate representative testified would be relied upon to investigate Nunez's claims. And such an incongruous conclusion is contrary to "transparency and facilitation of communication" which RESPA was enacted to promote. *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1135 (11th Cir. 2014).

The Second NOE raised two errors: (1) the improper suspension of Nunez's payments, and (2) the continued failure to honor the loan modification agreement, as indicated by Chase's collection efforts. Chase again responded that no error occurred and then provided the timeline of mortgage modification and how it related to the foreclosure rescission action. Chase also explained why the funds were held in suspense. Apparently, the cancellation of the mortgage modification had to be reversed before Nunez's payments could be applied. Therefore, the payments received were held in suspense until Chase completed the necessary entries on August 22, 2014.

But Chase never directly addressed how it was honoring the loan modification agreement despite its acceleration and warning letters. Instead, Chase explained that it received Nunez's July 3, 2014, payment, but the modification process "was delayed while [Chase] reversed the plan cancellation." (Doc. 24-6 at 2.) Presumably, Chase meant that the acceleration and foreclosure

---

[4] The timestamp on Chase's Motion to Cancel Foreclosure sale in the underlying foreclosure action clearly shows that it was filed on March 21, 2013. (Doc. 75-4.) The foreclosure sale took play on March 20, 2013. (Doc. 24-2 at 2; Doc. 75-3.)

warnings were only sent because account entries had not yet been performed.[5] But such a presumption leads to a conclusion that the collection efforts were, in fact, erroneous—not to the conclusion that no error occurred.

Certainly, it is possible that Chase's investigations were reasonable despite its contradictory conclusions. But a rational trier of fact might expect a reasonable conclusion from a reasonable investigation.

### 2. Did Chase's Second Written Response Comply with RESPA?

Besides a reasonable investigation, 12 C.F.R. § 1024.35(e)(1)(i)(B) requires that servicers issue a written notification containing "a statement of the reason or reasons" for its determination that no error occurred.[6] Nunez argues that Chase's second response violated RESPA as a matter of law because Chase did not provide the "reason or reasons" that it found no error. 12 C.F.R. § 1024.35(e)(1)(i)(B).

Nunez relies on the deposition testimony of Chase's corporate representative for support. The particular portion is related to an acceleration and foreclosure letter dated September 11, 2014. (Doc. 86-2 at 23:20–24:8.) Namely,

> Q. Was the September 11th, 2014 letter sent in error?
> . . .

---

[5] Indeed, even Chase's corporate representative seemed to be confused as to why the acceleration and foreclosure warning letters were sent, stating, "I don't know why those letters went out." (Doc. 86-1 at 44:24.) But soon after her admission of ignorance, she came to a similar conclusion as the Court, stating, "Well, at the time that this letter went out on August 15th, the adjustments weren't made until they started being made on August 18th through the 22nd." (*Id.* at 45:7–11.)

[6] A servicer's written notification must also contain "a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance." 12 C.F.R. § 1024.35(e)(1)(i). But these requirements are not at issue in the current case.

> A. No, because the August 1st and September 1st payments were still due.
> Q. How is threatening foreclosure in September consistent with honoring the loan modification that you contend became effective in late August? Can you explain that to me?
> . . .
> A. The loan modification was put in place in August, August 18th. However, the payment for August 1st and September 1st were still not paid. So the loan was delinquent again.

(*Id.* at 25:5–20.) In other words, Chase's representative testified that the September 11, 2014, acceleration and foreclosure letter was not erroneous, but, rather, consistent with honoring the loan modification agreement because the loan was delinquent. Nunez argues that this must mean that the "reason" Chase found no error was the delinquent status of the loan—a reason that was absent from Chase's second RESPA response. Therefore, Nunez posits, Chase violated RESPA as a matter of law.

Nunez's argument is compelling. Chase likely should have mentioned the loan's delinquency, and a reasonable investigation would have uncovered that problem. But Nunez sent her Second NOE on September 8, 2014, two days before the September 11 letter referenced above, and therefore, the September 11 letter could not be included among the errors Nunez complained of in her Second NOE. Further, the remainder of the Chase representative's testimony is consistent with the "reasons" supporting the conclusion it reached in its second RESPA response. Namely, Chase's representative testified that, due to the need to reverse the cancellation of the mortgage modification, account "adjustments were not made until August 18th." (Doc. 49 at 47:4–8.) The collections letter attached to Nunez's Second NOE reflected "amounts due that were based on the pre-loan modification adjustment numbers that were in the system." Thus, Chase's representative relies on the timing of entries for her support that no error occurred, just as Chase said in its second RESPA response.

Therefore, taking all inferences in a light supporting Chase, a reasonable jury could find that Chase provided the reason or reasons that it found no error. And, thus, Nunez's motion will be denied.

### 3. Has Nunez Provided Sufficient Evidence of Damages?

"Damages are 'an essential element' of a RESPA claim." *Lage v. Ocwen Loan Serv. LLC*, 839 F.3d 1003, 1011 (11th Cir. 2016) (quoting *Renfroe*, 822 F.3d 1241, 1246 (11th Cir. 2016)). There are two types of available damages under RESPA: (1) actual damages sustained as a result of the RESPA violation and (2) "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1). Nunez has alleged that she is entitled to both actual and statutory damages.

#### *(a)  Actual Damages*

Chase argues that it is entitled to summary judgment because Nunez has failed to provide sufficient evidence of damages. Nunez alleges that she suffered actual damages in the form of (1) emotional distress, and (2) attorneys' fees and related expenses. (Doc. 93 at 11.) To recover actual damages, a plaintiff must "present specific evidence to establish a causal link between the financing institution's violation and [her] injuries." *McLean*, 398 F. App'x at 471.

First, Nunez's deposition testimony shows that she started suffering from depression after losing her job during the 2009 recession. (Doc. 95-1 at 74.) Nunez began feeling better after she was prescribed medication in 2010, but relapsed when Chase cancelled her modification. (*Id.* at 76.) She also testified that her emotional distress continued after Chase transferred service to M&T and Bayview because "nothing ha[d] been resolved." (*Id.* at 80.) Thus, a reasonable jury could find that if Chase had fully complied with RESPA, Nunez would have had the information

- 15 -

to solve any remaining problems with her loan and would have avoided foreclosure and collection notices from Chase, Bayview, and M&T; and any continued emotional distress. (Doc. 24-4 at 1, 5, 6; Doc. 24-7 at 4, 18.)

Second, Nunez claims she was damaged in the form of attorneys' fees, costs, and related expenses flowing from both her continued effort to resolve the errors brought to Chase's attention in her Second NOE, and the subsequent foreclosure action brought by Bayview. Nunez was represented by both pro bono and for-profit counsel throughout her interactions with Bayview and M&T. A reasonable jury could find that if Chase had complied with RESPA, Nunez would not have required further advice of counsel. Therefore, Nunez has presented sufficient evidence of actual damages to withstand a motion for summary judgment.

*(b)    Statutory Damages*

Nunez also claims that she is entitled to statutory damages because "Chase's repeated failures to properly respond to both of [her notices] are part of Chase's pattern and practice of noncompliance with the RESPA/Regulation X error resolution procedures." (Doc. 24 ¶ 33.) "In order to recover statutory damages [under RESPA], the plaintiff must show 'a pattern or practice of noncompliance.'" *McLean*, 595 F. Supp. 2d at 1365. The term "pattern or practice of noncompliance" is interpreted within the usual meaning of the words and "suggests a standard or routine way of operating." *Id.* (citations and quotation omitted). To establish the above, "a plaintiff must allege some RESPA violations 'with respect to other borrowers.'" *Renfroe*, 822 F.3d at 1247 (quoting *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013)). "Though there is no magic number of violations that create a 'pattern or practice of noncompliance,' courts have held that two violations of RESPA are insufficient to support a claim for statutory damages." *Id.* (quoting *Kapsis v. Am. Home Mortg. Serv. Inc.*, 923 F. Supp. 2d 430, 445 (E.D.N.Y. 2013)). But,

"allegations of five RESPA violations have been deemed adequate to plead statutory damages." *Id.* (citing *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 868–69 (N.D. Ill. 2002)).

The entirety of the evidence that Nunez relies on to establish statutory damages are three unrelated cases where Chase defended against RESPA claims. Two were pending adjudication when Nunez filed her Amended Complaint (Doc. 24), but have since been dismissed with no finding that Chase violated RESPA. (Doc. 93-4; Doc. 93-5.)[7] In the third, *Marias v. Chase Home Financing, LLC*, the court did, indeed, find that Chase violated RESPA. 24 F. Supp. 3d 712, 731 (S.D. Ohio).

Thus, outside of her own allegations, Nunez relies on only a single RESPA violation to support her claim for statutory damages. A single RESPA violation is inadequate to show a pattern or practice of noncompliance with RESPA. *Renfroe*, 822 F.3d at 1247. Therefore, Chase is entitled to summary judgment with respect to Plaintiff's pattern or practice of noncompliance claim.

## IV. Negligence Per Se

"A negligence per se claim [is] appropriate under Florida law when there is a violation of a 'statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury.'" *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 353 (11th Cir. 2012) (quoting *deJesus v. Seaboard Coast Line R, Co.*, 281 So. 2d 198, 201 (Fla. 1973)). Nunez's negligence per se claim is dependent on a finding that Chase breached the duties imposed on it by RESPA. As described above, a reasonable jury could find that Chase violated RESPA and that Nunez suffered damages as a result. Therefore, Nunez's negligence per se claim stands.

---

[7] *JPMorgan Chase Bank, N.A., v. Lewis*, No. 013-CA-0118, (Fla. 20th Cir. Ct. Dec. 28, 2015) (dismissed); *Hernandez v. JP Morgan Chase Bank N.A.*, 1:14-cv-24254, (S.D. Fla. Sept. 9, 2016) (dismissed).

## V. Conclusion

In summary, the Court finds that Nunez has presented sufficient evidence on which a reasonable jury could find that Chase violated RESPA and that she was damaged as a result. Thus, Nunez's RESPA and negligence per se claims survive Chase's motion. Additionally, a reasonable jury could find that Chase provided the reason or reasons supporting its conclusion of no error in its second RESPA response. Therefore, Nunez's motion for summary judgment as to Chase's second RESPA response will be denied.

It is, therefore, **ORDERED** that

(1) Chase's Motion for Summary Judgment (Doc. 87) is **GRANTED** as to Nunez's claim for statutory damages under RESPA, but **DENIED** otherwise; and

(2) Nunez's Motion for Partial Summary Judgment (Doc. 86) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 1, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party